IN RE APPLICATION OF HILL.
RUTH G. HILL, ADMINISTRATRIX OF THE GEORGE SAUNDERS ESTATE, APPELLANT, V. MARY LEE SWANSON, APPELLEE.
70 N. W. 2d 503

Filed June 3, 1955. No. 33753.

*Pierson & Blue,* for appellant.

*William L. Walker* and *Earl Ludlam,* for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ., and KOKJER, District Judge.

SIMMONS, C. J.

This is an appeal by the administratrix from an

order of the district court affirming the sale of real estate. The purchaser is appellee. We reverse the judgment and remand the cause with directions.

The real estate involved is a residence property. The administratrix filed her petition for leave to sell real estate to pay debts of the estate and expenses of administration.

She alleged that there were debts in excess of $5,000 consisting of old age assistance liens and claims, exclusive of court costs, and administrator and attorney's fees.

The trial court licensed the sale "in manner required by law * * * subject * * * to whatever incumbrances existed at the time of the death of" deceased. The license required a sale for cash with 15 percent to be paid at the conclusion of the sale, and the balance upon confirmation. The notice for the sale provided that the property would be sold at public auction "to the highest bidder for cash, subject to all encumbrances thereon," and "At least twenty percent of the purchase price must be paid in cash on the date of sale * * *." The date of the sale was fixed for September 2, 1954.

October 22, 1954, the Northeast Realty, Inc. (hereinafter called the realty company) moved to set aside the sale and order another sale on the ground that the highest bid was $1,900; that it was disproportionate to the value of the real estate; and offered to bid $2,100 for the premises. To guarantee the bid it attached to its motion a certified check for $420 payable to the administratrix, "to be applied to the purchase price" of the premises if it were a successful bidder at a new sale.

November 2, 1954, the administratrix filed her report reciting that she had offered the real estate for sale to the highest bidder for cash and that it was sold to Mary Lee Swanson (hereinafter called the purchaser) for the sum of $900; that subsequent to the sale two parties had filed their written offers to increase the

amount of the bid to $2,100; and that it was to the best interest of the estate that a further sale be held. She moved for a new sale for the reason that the amount obtained did not reflect the true value of the real estate. The report does not show that any part of the bid was paid at the time of sale.

November 2, 1954, the purchaser moved for an order confirming the sale. She recited that she bid $900 "for said equity in said property, if any, at the time of said sale." It was further stated that the upset bids were not received until it was apparent that a large old age assistance lien could be compromised so that a "merchantable title could be obtained."

The matter was set for hearing before the trial court on the motion of the realty company to vacate the sale, on the motion of the administratrix for a new sale, and on the motion of the purchaser to confirm. The journal entry recites that one Johnson offered to bid $2,205 as purchase price, one Lotman offered to bid $2,300 as purchase price, and that Johnson then withdrew his offer and the realty company secured leave and amended its offer to bid $2,200. The trial court denied the motions of the realty company and the administratrix; sustained the motion of the purchaser; and confirmed the sale to the purchaser "for $900.00 subject to all encumbrances." The court ordered the administratrix to deliver a deed to the purchaser upon payment of the purchase price in full.

The transcript of the district court on appeal to the Supreme Court imports absolute verity. Zabloudil v. Lane, 159 Neb. 547, 68 N. W. 2d 193.

Section 30-1120, R. R. S. 1943, provides: "The executor or administrator making any sale shall immediately make a return of his proceedings upon the order of the sale in pursuance of which it is made, to the judge of the district court granting the same, who shall examine the proceedings, and may also examine such executor or administrator, or any other person on oath,

touching the same; and if he shall be of opinion that the proceedings were unfair, or that the sum bid is disproportionate to the value, and that a sum exceeding such bid at least ten per cent, exclusive of the expenses of a new sale, may be obtained, he shall vacate such sale and direct another to be had, of which notice shall be given; and the sale shall be in all respects as if no previous sale had taken place."

Section 30-1121, R. R. S. 1943, provides: "If it shall appear to the district judge that the sale was legally made and fairly conducted, and that the sum bid was not disproportionate to the value of the property sold, or if disproportionate, that a greater sum than specified in section 30-1120 cannot be obtained, he shall make an order confirming such sale, and directing conveyances to be executed."

According to the transcript, a sale was made and confirmed, subject to all encumbrances, for $900, and that done after there was a bid, supported by a deposit of $420, for $2,100, raised at the time of the hearing to $2,200 and without conditions recited in the offer, and an offer made in open court to bid $2,300.

We held in In re Estate of Parker, 72 Neb. 601, 101 N. W. 233: "In the conduct of proceedings for the sale of real estate for the payment of debts of a deceased person, the principal duty of a district court is to conserve the estate * * *."

In Rohlff v. Estate of Snyder, 73 Neb. 524, 103 N. W. 49, property was sold for $3,625. A responsible bidder, supporting his bid by a deposit agreed to bid $4,000. It was argued that the property was not worth more than the bid; and that the bid was not disproportionate to the value of the property sold. We held: "The evidence shows it will sell for $4,000 at a resale, hence, for the purpose of this controversy, that sum is its actual value."

Here, according to the transcript, the trial court had a bid of at least 233% more than that bid by the purchaser.

It was supported by a deposit, while it is not shown that the purchaser made any deposit to support the confirmed bid. We think it manifest that under the provisions of section 30-1120, R. R. S. 1943, the sum bid was disproportionate to the value. It also appears that a sum exceeding the bid made, at least 10 percent, exclusive of the expenses of a new sale, may be obtained. The estimates as to the cost of a new sale were from $20 to about $100. The confirming of the sale under such circumstances was an abuse of judicial discretion, requiring that the order of confirmation be reversed.

The bill of exceptions relates a different story. It goes to the question of value and the requirement of a "legally made and fairly conducted" sale, and to the requirement that if the sale proceedings are "unfair" the sale shall be vacated and another sale had.

The party who conducted the sale testified that he announced at the opening of the sale the property was being sold subject to encumbrances; that the first mortgage lien was $1,000; that old age assistance liens were about $4,200; and that he would accept bids for any amount over the $1,000 first mortgage and would attempt to compromise the old age assistance liens "for the amount remaining after the expenses of sale and fees had been paid." The witnesses throughout refer to old age assistance liens of $4,200. An exhibit shows that the county filed a claim with the estate for $3,739.59, "of which $2015.74 is a lien on the real estate herein."

A bid of $775 was received "over and above * * * the first mortgage of $1000." The attorney for the bidder and the attorney for the administratrix conferred and decided that $900 was required to meet the items that they deemed had to be paid, so the purchaser raised her bid to $900. The items that it was thought had to be paid were administrator and attorney's fees, burial and probate expenses, and $300 to the county to

satisfy the old age assistance lien. On that basis the $900 bid was made and reported.

The evidence is that the attorney for the administratrix with an attorney for the county then went to the county court and secured an understanding as to the allowance of fees, amount of claims that had to be paid, etc. They then went to the county commissioners and secured an agreement that the county would compromise the old age assistance lien for $300 but that if a greater amount was received from the sale that then the county should benefit. It was found that the $900 was not enough, so the purchaser agreed to pay $65 more.

These arrangements were party made and obviously were not in accord with the terms of the trial court license to sell, to which it appears no one paid particular attention.

Section 30-1109, R. R. S. 1943, requires that the proceeds of any real estate sold for the payment of debts shall be deemed assets in the hands of the executor or administrator. That provision appears to have been overlooked in this instance.

It is quite apparent that the parties contemplated that a substantial part of the proceeds of the sale, made subject to encumbrances, would be used to secure a release of the encumbrances, and that instead of the proceeds of the sale being deemed assets of the estate they were in effect to become assets of the purchaser to be used to release encumbrances.

At the time of the hearing, the realty company learned of the compromise that had been worked out with the county, and accordingly raised its bid to $2,200 stating "* * * I think that goes in the regular procedure that when a man buys a property he gets good title to it, especially where you are dealing with the court." The realty company witness stated that the "property was worth more money" and that the market value "might be $2500."

Looking at this situation from the party-made terms of sale, it appears that the parties, with approval of their counsel, were bidding on the basis of securing what they expected would be a clear title to the real estate rather than one subject to encumbrances, and that the sale was not to be subject to encumbrances but rather that the proceeds of the sale were to be used to pay and otherwise satisfy encumbrances.

Even on that basis it is obvious that the property was sold for an amount disproportionate to its value and that a sum exceeding the 10 percent requirement of the statute, exclusive of the expenses of a new sale, might be obtained.

It is argued that under no circumstances can the estate be the beneficiary of a new sale. It is obvious that under the terms of the sale fixed by the court and the bids made, as appearing in the transcript, that the estate and its creditors would be substantial beneficiaries of the sale of this property, either at the bid which the court confirmed, or at the bid made by the realty company. It is likewise obvious that, under the party-made terms of sale, that the county might well be a substantial beneficiary of a new sale.

It is also obvious that the parties here were in good faith bidding under a complete misapprehension of the terms of the sale and the obligations as to encumbrances that their bids entailed. No one appears to have advised them otherwise. The statute requires that sales of this character be "legally made and fairly conducted" and that if the proceedings are "unfair" the court "shall vacate such sale and direct another to be had, of which notice shall be given; and the sale shall be in all respects as if no previous sale had taken place."

We think this sale as conducted and the proceedings subsequent to it manifestly come within the broad terms of an unfair sale.

The judgment of the trial court is accordingly reversed

and the cause remanded with directions to vacate the sale and direct another sale to be had according to law.

REVERSED AND REMANDED WITH DIRECTIONS.

KOKJER, District Judge, concurs in result.